**Jimmy LEONG, Plaintiff–Appellant,**

v.

**John E. POTTER, Postmaster General, Defendant–Appellee.**

No. 02–16856.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 8, 2003.

Filed Oct. 29, 2003.

---

Russell Rowen, Lerner & Veit, P.C., San Francisco, CA, for the plaintiff-appellant.

Abraham Simmons, United States Attorney's Office, San Francisco, CA, for the defendant-appellee.

Before HUG, B. FLETCHER, and TASHIMA, Circuit Judges.

## OPINION

BETTY B. FLETCHER, Circuit Judge:

The United States Postal Service ("USPS") terminated plaintiff-appellant Jimmy Leong's employment in 1999. Leong sued, alleging that USPS discriminated against him on the basis of his race, color, religion, sex, and/or national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, as well as on the basis of his mental disability in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 794. The district court dismissed Leong's Rehabilitation Act claim for lack of subject matter jurisdiction because he did not exhaust administrative remedies as to that claim, and it granted summary judgment in favor of the defendant on his Title VII claims. Leong appeals both decisions. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I. BACKGROUND

Leong is a Burmese immigrant of Chinese ancestry who came to the United States in 1982. He began working at the San Francisco Bulk Mail Center in 1991. During the course of his employment, he was reprimanded and suspended various times for cursing at supervisors, refusing to follow directions, and other violations of Postal Service rules.

USPS issued Leong a Notice of Removal on September 2, 1997 after he arrived late and intoxicated, yelled and swore at various supervisors, and then left work during his shift on August 19, 1997. Leong's union helped him negotiate a "Last Chance Agreement," which allowed Leong to continue working for USPS if he followed certain conditions specified in the agreement and did not break other work rules. In late 1998 and early 1999, various co-workers complained that Leong cursed at them and obstructed their work. On January 28, 1999, USPS issued Leong a Notice of Removal, citing his violation of the Last Chance Agreement and various postal service rules, considered in light of three earlier suspensions.

In March 1999, after his termination became effective, Leong requested a meeting with an Equal Employment Opportunity ("EEO") counselor at the Bulk Mail Center. Because Leong was no longer employed with the Postal Service, he was not able to meet with the counselor in person, but he submitted an affidavit to the Equal Employment Opportunity Commission ("EEOC") stating that he believes the Postal Service discriminated against him on the basis of his race, color, religion, sex, national origin, and/or age. Leong's affidavit does not mention disability.

On March 5, 2001, Leong filed a pro se Title VII complaint in the Northern District of California. On January 22, 2002, Leong, represented by counsel, filed an amended complaint, adding his disability

discrimination claim under the Rehabilitation Act. The amended complaint alleged that Leong is disabled because he suffers from depression and language and speech processing difficulties. Leong was diagnosed with schizotypal personality disorder in June 2002, and this disability now provides the basis for his disability discrimination claim. On August 2, 2002, the district court dismissed his disability complaint for lack of subject matter jurisdiction, holding that Leong failed to exhaust administrative remedies as to his disability complaint because he never alleged disability discrimination during the EEOC investigation. Additionally, the district court granted USPS summary judgment on Leong's Title VII claims. Leong timely filed an appeal to this Court.

## II. REHABILITATION ACT CLAIM

### A. *Standard of Review*

 The district court's determination that it lacks subject matter jurisdiction because the plaintiff failed to exhaust administrative remedies is reviewed de novo. *B.K.B. v. Maui Police Dep't,* 276 F.3d 1091, 1099 (9th Cir.2002). If the district court correctly determines its jurisdiction, the court's decision whether to apply equitable tolling or equitable estoppel is reviewed for abuse of discretion. *Santa Maria v. Pac. Bell,* 202 F.3d 1170, 1175 (9th Cir.2000).

### B. *Failure to Exhaust Administrative Remedies*

The district court properly held that Leong was required to exhaust his administrative remedies with the EEOC before pursuing his Rehabilitation Act claim in district court. *Leorna v. U.S. Dep't of State,* 105 F.3d 548, 550 (9th Cir.1997); *Vinieratos v. United States,* 939 F.2d 762, 773 (9th Cir.1991). A claimant must consult an EEO counselor in order to attempt

to resolve a dispute informally before resorting to litigation. *Leorna,* 105 F.3d at 550.

■ Although failure to file an EEOC complaint is not a complete bar to district court jurisdiction, substantial compliance with the exhaustion requirement is a jurisdictional pre-requisite. *Sommatino v. United States,* 255 F.3d 704, 708 (9th Cir. 2001). The jurisdictional scope of the plaintiff's court action depends on the scope of the EEOC charge and investigation. *EEOC v. Farmer Bros. Co.,* 31 F.3d 891, 899 (9th Cir.1994); *Sosa v. Hiraoka,* 920 F.2d 1451, 1456 (9th Cir.1990). The specific claims made in district court ordinarily must be presented to the EEOC. *Albano v. Schering–Plough Corp.,* 912 F.2d 384, 385 (9th Cir.1990). However, the district court has jurisdiction over any charges of discrimination that are "like or reasonably related to" the allegations made before the EEOC, as well as charges that are within the scope of an EEOC investigation that reasonably could be expected to grow out of the allegations. *Sosa,* 920 F.2d at 1456.

■ The district court did not consider whether Leong's disability claim is "like or reasonably related to" the claims he presented to the EEOC. *Sommatino,* 255 F.3d at 708; *Sosa,* 920 F.2d at 1456. However, any error is harmless, as Leong's disability claim differs substantially from the claims he presented to the EEOC. Construing his EEOC charge with utmost liberality, we conclude that it does not satisfy the exhaustion requirement.

Leong never attempted to amend his EEOC charge to reflect his Rehabilitation Act claim. Leong's disability claim relies on a different theory and a different statute than his other claims. Disability discrimination was not investigated by the EEOC, and such an investigation could not have been reasonably expected to grow out of Leong's charges. Nothing in Leong's

affidavit would have led the EEOC to suspect that he was disabled or had been subjected to disability discrimination. Leong stated in his EEOC affidavit:

> I have no idea why the management provide for this action. No. I do not have any evidence that management's reason for their action ... is excuse. No. I do not have any witnesses with first-hand pertinent knowledge of this incident. No. I have no comment for any derogatory or negative remarks made by the management ... concerning my race, color, religion, sex, national origin, [or] age.

Furthermore, Leong's charges do not provide the Postal Service adequate notice of his disability discrimination claim or that a voluntary settlement of his claim might be possible through reasonable accommodation of his mental illness. *See Farmer Bros.,* 31 F.3d at 899 (holding that the plaintiff's sex discrimination claim gave the employer adequate notice of a related sex discrimination claim added during litigation).

A decision that an EEOC complaint with no mention whatsoever of disability is "like or reasonably related to" Leong's disability claim would reduce the exhaustion requirement to a formality. Although "the EEOC charge does not demand procedural exactness," *Sosa,* 920 F.2d at 1458, it requires something more than Leong provided. Therefore, the district court did not err in finding that Leong failed to exhaust his administrative remedies for his claim under the Rehabilitation Act.

### C. *Equitable Relief*

■ The exhaustion requirement is akin to a statute of limitations and is subject to waiver, equitable estoppel, and equitable tolling. *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *Boyd v. U.S. Postal*

*Serv.,* 752 F.2d 410, 414 (9th Cir.1985). Leong argues that the district court erred in not employing the doctrine of equitable estoppel or equitable tolling to allow his claim. We conclude that the district court did not abuse its discretion by not granting Leong equitable relief.

### 1. Equitable estoppel

██ Equitable estoppel focuses on the defendant's wrongful actions preventing the plaintiff from asserting his claim. *Santa Maria,* 202 F.3d at 1176. Leong argues that the Postal Service wrongfully prevented him from asserting his claim by not permitting him to enter his former work site to meet with an EEO counselor. The district court found that there is no triable issue of fact that the defendant wrongfully prevented Leong from asserting his claim. Leong did not attempt to seek EEO counseling until more than a month after receiving his Notice of Removal. There is nothing unusual about not allowing terminated employees access to their former work sites, especially where an employee was terminated for repeated obscene and threatening behavior. There is no evidence that the Postal Service refused to let Leong enter his former job site *because* he wished to speak with an EEO counselor.

Furthermore, there is no evidence that meeting with the EEO counselor in person would have helped Leong advance his claim. Appellant contends that his disability would have been recognized by an EEO counselor. This bare assertion, in light of the fact that Leong's mental illness was not recognized by anyone until recently, is not enough to establish that the district court abused its discretion in its decision not to apply equitable estoppel to allow Leong's claim.

### 2. Equitable tolling

██ Equitable tolling focuses on a plaintiff's excusable ignorance and lack of prej-

udice to the defendant. *Santa Maria,* 202 F.3d at 1176. The doctrine of equitable tolling "has been consistently applied to excuse a claimant's failure to comply with the time limitations where she had neither actual nor constructive notice of the filing period." *Leorna,* 105 F.3d at 551. "If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations ... until the plaintiff can gather what information he needs." *Santa Maria,* 202 F.3d at 1178. "The time period for filing a complaint of discrimination begins to run when the facts that would support a charge of discrimination would have been apparent to a similarly situated person with a reasonably prudent regard for his rights." *Boyd,* 752 F.2d at 414.

██ However, "once a claimant retains counsel, tolling ceases because she has gained the means of knowledge of her rights and can be charged with constructive knowledge of the law's requirements." *Leorna,* 105 F.3d at 551 (internal citations omitted). Leong did not attempt to file a disability discrimination charge with the EEOC or to amend his original charge to include a new basis of discrimination after retaining counsel. The district court held that even if equitable tolling were available, tolling would excuse delay, but not Leong's complete failure to file a disability claim with the EEOC.

Even if we assume that Leong was entitled to equitable tolling until he retained counsel who recognized his disability claim, his lawyer was required to exhaust administrative remedies as to his disability claim once recognized. The district court's refusal to grant Leong equitable tolling was not an abuse of discretion.

### III. TITLE VII CLAIMS

██ We review the district court's grant of summary judgment de novo.

*United States v. City of Tacoma,* 332 F.3d 574, 578 (9th Cir.2003). This Court must determine if, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.;* Fed.R.Civ.P. 56(c).

Federal law prohibits discharging any individual because of his race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2. In order to establish a prima facie case of discrimination, a plaintiff must show (1) that he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably. *See, e.g., McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment decision. *Id.* Although the burden of production shifts to the defendant at this point, the burden of proof remains with the plaintiff at all times. *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the employer offers a nondiscriminatory reason, the burden returns to the plaintiff to show that the articulated reason is a pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817.

The district court held that Leong failed to establish a prima facie case of discrimination because he could not provide evidence that similarly situated employees were treated more favorably than Leong was treated. Leong argues that three individuals were similarly situated because they committed serious violations involving obscenity and/or physical abuse and were treated more favorably because they were not terminated. However, Leong was subject to a "Last Chance Agreement" negotiated as an alternative to termination after earlier, serious violations of Postal Service rules.[1] Leong's proposed comparators are not similarly situated because they were not subject to such agreements. Although these employees did commit serious violations, it appears none amassed a record of misconduct comparable to Leong's. Leong's record of reprimands and suspensions suggests that the Postal Service is generous in affording employees "second chances," but USPS must be permitted to draw the line somewhere. Therefore, the district court did not err in holding that Leong failed to establish a prima facie case of discrimination.

Alternatively, the district court held that if Leong had established a prima facie case of discrimination, the Postal Service offered a legitimate, nondiscriminatory reason for terminating Leong, specifically that Leong violated his Last Change Agreement on several occasions. Appellant offers various facts to show that the Postal Service's reason for terminating him was pretextual. Leong focuses largely on his supervisor's failure to discipline a co-worker who told Leong to "get [his] ass to work." We agree with the district court that, taken together, these facts do not raise any genuine issues of material fact to rebut USPS's nondiscriminatory reason for terminating Leong's employment, sug-

---

1. Leong argues that the provision of the Last Chance Agreement prohibiting his use of profanity was no longer in effect when he was terminated, because he had completed the counseling required to void that provision. Assuming *arguendo* that the profanity provi-sion was not in effect, Leong violated other USPS rules and provisions of the Last Chance Agreement, justifying his termination under the agreement, which by its terms was in effect until October 1999.

gesting at most that his supervisor was not very thorough in her discipline and paperwork.

Leong further contends that the district court abused its discretion in refusing to draw an adverse inference because USPS was unable to produce page one of his supervisor's report about his termination. Leong argues that such an inference would allow his claim to survive summary judgment. The district court granted USPS's motion to strike Leong's request for an adverse inference because it was made in a supplemental brief that was over-length and filed late, and Leong did not seek leave to file the supplemental brief. The district court did not abuse its discretion by enforcing the court's procedural rules.

The district court stated that even if it were to consider Leong's supplemental brief, an adverse inference would not be justified because the Postal Service's reasons for terminating Leong were well-documented and there is no reason to believe that the missing page would contain any contrary information. The district court did not abuse its discretion in this determination.

## IV. CONCLUSION

Leong failed to exhaust his administrative remedies for his disability claim, even after obtaining counsel, and the district court properly dismissed his disability claim on this ground.

Leong is unable to demonstrate a prima facie case of discrimination under Title VII because he cannot show that similarly situated employees were treated more favorably than he was treated. Furthermore, he is unable to provide evidence that USPS's reason for terminating him was a pretext for discrimination. Given Leong's record and his failure to show evidence of discrimination, the district court properly granted summary judgment for USPS on Leong's Title VII claims.

AFFIRMED.